**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIO V.; GERALDINE JULIE B.; I.G.V., a minor by and through Guardian Ad Litem MARIO V.; OSCAR G.; CHRISTINA G.; O.D.G., a minor by and through Guardian Ad Litem CHRISTINA G.; Y.P., a minor by and through Guardian Ad Litem CHRISTINA G.; HUGO P.; ALICIA P.; A.P.H., a minor by and through Guardian Ad Litem ALICIA P.; and other Similarly Situated Plaintiffs,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY ARMENTA and DIANA GARCIA,<br><br>Defendants. | Case No. 18-cv-00041-BLF<br><br>**ORDER GRANTING DEFENDANT GARCIA'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT ARMENTA'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 73, 74] |

This putative class action was filed after an elementary school teacher performed blood sugar testing on students without their parents' knowledge or consent. Several students and parents brought suit against the teacher, the school principal, the school, and the school district. The school and the school district thereafter were dismissed, leaving only the teacher, Henry Armenta, and the school principal, Diana Garcia, as defendants in the case. Armenta and Garcia are sued in their individual capacities.

Garcia has filed a motion for summary judgment, which is joined by Armenta. For the reasons discussed below, the motion for summary judgment is GRANTED as to Garcia and DENIED as to Armenta.

## I. BACKGROUND

Armenta taught fifth grade at Oscar F. Loya Elementary School ("Loya" or "the school"). *See* Armenta Dep. 13:15-14:23, Bonner Decl. Exh. 3, ECF 75-4. He ran an after school program in his classroom for students who needed help with their homework or a place to do homework. *See id.* 15:1-11. Armenta is diabetic, and he tests his blood sugar levels in the afternoon with a glaucometer. *See id.* 22:16-21. The test involves pricking a finger with a lancet. *See id.* 71:11-25. In 2011, Armenta began offering to administer glaucometer tests to students who came to his classroom after school and volunteered to be tested. *See id.* 14:16-24. Armenta rewarded children who agreed to the testing with Gatorade, potato chips, and other treats. *Id.* 70:18-71:10. Armenta did not notify the children's parents that he would be pricking their fingers with a lancet, nor did he obtain parental consent for the blood testing. *See id.* 26:16-24.

On February 6, 2017, the parents of a Loya student informed the school principal, Garcia, that Armenta had performed blood testing on their child and on other children. *See* Garcia Decl. ¶ 2, ECF 73-2. Garcia reported the information to the school district, to Child Protective Services, and to the Salinas Police Department. *See id.* ¶¶ 3, 7. Garcia also interviewed the child of the reporting parents, as well as six other students. *See id.* ¶ 4. Garcia spoke with Armenta, who admitted to doing blood sugar testing on students. *See id.* ¶ 5. Garcia directed Armenta to report to the school district. *See id.* ¶ 6. Armenta has not taught at Loya since February 6, 2017. *See id.* Armenta now works as a Lyft driver. *See* Armenta Dep. 13:14-19, Bonner Decl. Exh. 3, ECF 75-4.

Several students ("Minor Plaintiffs") and their parents ("Parent Plaintiffs") filed this action on January 3, 2018. *See* Compl., ECF 1. The operative SAC asserts two claims under 42 U.S.C. § 1983. Claim 1, against both Garcia and Armenta, is a § 1983 claim for violation of Plaintiffs' Fourteenth Amendment rights. Claim 2, against Armenta only, is a § 1983 claim for violation of Minor Plaintiffs' Fourth Amendment rights. Plaintiffs seek to litigate these claims on behalf of themselves, all similarly situated Loya students who were subjected to blood testing by Armenta, and those children's parents.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

## III. DISCUSSION

Garcia has filed a motion for summary judgment on Claim 1, the only claim asserted against her. Armenta, against whom Claim 1 also is asserted, has filed a joinder. The Court addresses the merits of the summary judgment motion first as to Garcia, and then as to Armenta.

### A. Garcia

Claim 1 is for violation of Plaintiffs' Fourteenth Amendment right to family association. *See* SAC ¶¶ 33-36. "Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). That right to family association is an essential liberty interest protected by the Fourteenth Amendment. *See id.* "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Id.* at 1141.

Plaintiffs assert that Armenta violated this right by testing students' blood without parental consent, and that Garcia violated the right by failing to stop him. *See* SAC ¶¶ 36-38. As to

3

Garcia, Plaintiffs allege that she "knew or should have known about the unsafe medical practices, including pricking the fingers of multiple students using a blood sugar testing device to extract blood from minor fifth (5th) grade students, happening on school premises for several years." SAC ¶ 38. Plaintiffs further allege that Garcia "fail[ed] to take action to stop or correct Defendant ARMENTA's abusive conduct." *Id.*

Garcia contends that she is entitled to summary judgment because there is no evidence that she knew about Armenta's blood testing of students before any of the named Minor Plaintiffs were pricked. Garcia also contends that Plaintiffs' allegations that she "should have known" about Armenta's conduct are insufficient to raise a constitutional claim. Finally, Garcia argues that Minor Plaintiffs have not alleged a violation of their protected liberty interests.

In opposition, Plaintiffs argue that there is a factual dispute as to when Garcia learned about Armenta's blood testing activities. Plaintiffs do not dispute Garcia's contention that allegations as to what she "should have known" are insufficient to raise a constitutional claim. Plaintiffs argue only that there is evidence that Garcia knew Armenta was performing blood testing on students without notice to or consent from their parents. Plaintiffs also argue that Minor Plaintiffs have alleged a violation of their protected liberty interests under the Fourteenth Amendment.

### 1. Knowledge of Armenta's Conduct

There is no *respondeat superior* liability under § 1983. *See Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007). However, a supervisor may be liable for the constitutional violations of his or her subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *See id.* In *Preschooler II*, the Ninth Circuit held that plaintiffs could pursue § 1983 claims against a school principal and other school officials based on their alleged knowledge that a teacher was abusing a student and their failure to report or take corrective action against the teacher. *See id.* at 1183. Plaintiffs therefore may assert a § 1983 claim against Garcia on the theory that she knew Armenta was testing students' blood sugar but did not report him or take corrective action against him.

Plaintiffs' allegations that Garcia "should have known" about Armenta's blood testing

4

activities are insufficient to assert a constitutional violation. As Garcia points out, "Mere negligence or lack of due care by state officials in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Plaintiffs' opposition brief does not address their claim that Garcia "should have known" of Armenta's conduct, and Plaintiffs therefore have abandoned that claim. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (failure to address claims in opposition to summary judgment constitutes abandonment).

Garcia has the initial burden on summary judgment to show that Plaintiffs cannot prevail on their claim that she knew Armenta was blood testing students but failed to take corrective action. Garcia submits her declaration that she learned about Armenta's activities for the first time on February 6, 2017, when parents of a student who had been subjected to blood testing complained to her. *See* Garcia Decl. ¶¶ 9-10, ECF 73-2. Garcia states that she never observed or was informed of Armenta's testing of students' blood sugar prior to that date. *See id.* ¶ 9. On February 6, 2017 – the date Garcia states she first learned of Armenta's conduct – Garcia reported Armenta to the school district, Child Protective Services, and the Salinas Police Department. *See id.* ¶¶ 3, 6-7. Armenta has not taught at Loya since February 6, 2017. *See id.* ¶ 6.

In addition to submitting her declaration, Garcia addresses record evidence that Parent Plaintiff Christina G. called the school during the 2015-2016 school year to report that Armenta had pricked the fingers of her two children, Minor Plaintiffs Y.P. and O.D.G. *See* Christina G. Dep. 25:10-15, 31:1-9, Exh. A to Bengtson Decl., ECF 73-3. Christina G. testified that she spoke to a school receptionist, Lydia, who promised "to speak to somebody about it." *Id.* 31:1-9. Garcia counters Christina G.'s deposition testimony with the declaration of the receptionist in question, Lydia Valtierra, who states that she has no recollection of receiving the call described by Christina G., is "confident" that she did not receive such a call, and is "confident" she never told Garcia that Armenta was testing the blood of Loya students. Valtierra Decl. ¶¶ 2-3, ECF 73-1.

This evidence is sufficient to meet Garcia's initial burden on summary judgment. The burden thus shifts to Plaintiffs to submit evidence sufficient to create a factual dispute.

5

Plaintiffs submit Christina G.'s deposition testimony, in which she described in some detail the call she remembers making to Lydia Valtierra during the 2015-2016 school year. *See* Christina G. Dep. 33:21-34:13, Exh. 1 to Bonner Decl., ECF 75-2. Christina G. testified that she was embarrassed about making the call, and that she asked to use her manager's office so that she could have privacy. *See id.* 33:24-34:5. Christina G. trusted Valtierra, however, because Valtierra was the volleyball teacher for Christina G.'s child Y. P. *See id.* 31:1-4. Christina G. specifically remembers saying to Valtierra, "you have a daughter," when discussing how upset Christina G. was about the blood testing. *See id.* 34:8-13. Valtierra reportedly assured Christina G. that she would tell someone about Armenta's conduct. *See id.* Plaintiffs also submit Valtierra's deposition, in which she testified that she is a mandated reporter and that if she had been told Armenta was testing students' blood, she would have reported it to the principal, Garcia. Valtierra Dep. 36:5-24, Exh. 2 to Bonner Decl., ECF 75-3. Plaintiffs argue that this evidence is sufficient to create a triable issue of fact as to whether Christina G. reported Armenta's blood testing activities to Valtierra during the 2015-2016 school year and whether Valtierra in turn reported those activities to Garcia.

The Court agrees that Plaintiffs' evidence is sufficient to create a factual dispute as to whether Garcia learned of Armenta's blood testing of students during the 2015-2016 school year, rather than on February 6, 2017 as she claims. Garcia's evidentiary objections to Valtierra's testimony as too speculative is OVERRULED. Valtierra properly may testify that, as a mandated reporter, she would have told Garcia about Armenta's conduct had it been reported to her. A reasonable jury could credit Christina G.'s testimony that she made the call in 2015-2016 over Valtierra's testimony that she has no recollection of receiving such a call. Further, a reasonable jury could infer that upon receiving Christina G.'s call, Valtierra performed her duty as a mandated reporter and informed Garcia of the claims.

However, even assuming for purposes of this motion that Garcia was informed of Armenta's conduct during the 2015-2016 school year, there is no evidence that the named Minor Plaintiffs were tested after Christina G. called the school, thus rendering this disputed fact immaterial to the claims. The SAC identifies four Minor Plaintiffs who were pricked by Armenta:

6

1  I.G.V., O.D.G., Y.P and A.P.H. Two of the four, Y.P. and O.D.G., were pricked only once, the
2  day before Christina G. telephoned the school and spoke to Valtierra. *See* Christina G. Dep. *See*
3  *id.* 24:16-22, 27:11-28:8, Exh. 1 to Bonner Decl., ECF 75-2. According to Christina G., Y.P. and
4  O.D.G. never went back to Armenta's classroom after that. *See id.* 24:16-22. The other two
5  Minor Plaintiffs, I.G.V. and A.P.H, cannot remember when they were pricked by Armenta. *See*
6  I.G.V.'s Response to Garcia's Special Interrogs., Set 1, at 2, Exh. F. to Bengtson Decl., ECF 73-3;
7  A.P.H's Response to Garcia's Special Interrogs., Set 1, at 2, Exh. G to Bengtson Decl., ECF 73-3.
8  Absent some evidence that Garcia knew about Armenta's blood testing of students prior to the
9  time the named Minor Plaintiffs were pricked, no reasonable trier of fact could find Garcia liable
10 for violating Plaintiffs' Fourteenth Amendment rights.

11 Accordingly, Garcia's motion for summary judgment is GRANTED. The possibility that
12 other unnamed class members were injured after Christina G.'s call to the school does not save
13 this claim. Prior to class certification, if it is found that the defendants are entitled to summary
14 judgment on the named plaintiffs' individual claims, "there is no further action for the district
15 court to take." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1085 (9th
16 Cir. 2016). Summary judgment for Garcia therefore is appropriate regardless of Plaintiffs' class
17 allegations, as this action has not been certified.

### 2. Minor Plaintiffs' Protected Liberty Interests

19 As an alternative basis for summary judgment against Minor Plaintiffs, Garcia argues that
20 Minor Plaintiffs have failed to allege a violation of their protected liberty interests under the
21 Fourteenth Amendment. In Claim 1, Plaintiffs cite California Education Code §48200 for the
22 proposition that "[s]tudents have an inalienable right to attend safe, secure and peaceful campuses
23 because of the compulsory nature of education." SAC ¶ 40. Plaintiffs further allege that "[a]
24 special relationship is formed between a school district and its students, resulting in the imposition
25 of an affirmative duty on the school district to take all reasonable steps to protect its students." *Id.*
26 According to Plaintiffs, this duty was breached by Garcia and Armenta. *See* SAC ¶ 41.

27 Garcia points out that § 48200, which provides that children between the ages of 6 and 18
28 are "subject to compulsory full-time education," says nothing about an inalienable right to attend a

7

safe school campus. Garcia contends that § 48200 does not give rise to a Fourteenth Amendment liberty interest in a safe school campus. In their opposition brief, Plaintiffs abandon their Fourteenth Amendment claim based on § 48200, instead arguing that all Plaintiffs, including Minor Plaintiffs, have a Fourteenth Amendment right to family association. In reply, Garcia argues that Claim 1 alleges violation of the right to family association only on behalf of Parent Plaintiffs, and not on behalf of Minor Plaintiffs.

At the hearing, the Court engaged Plaintiffs' counsel in a colloquy regarding the manner in which the right to family association is pleaded in the SAC. In particular, the Court pointed to language in Claim 1 suggesting that the right is asserted only on behalf of Parent Plaintiffs. For example, Claim 1 alleges that "[p]arents and children have a fundamental right to family association under the liberty interest of the 14th Amendment which includes the right to make important medical decisions *for their children*." SAC ¶ 35 (emphasis added). Other allegations likewise are framed in terms of Parent Plaintiffs' rights to make medical decisions for their children. *See* SAC ¶¶ 36-38. Plaintiffs' counsel clarified that Claim 1 is intended to assert violations of the Fourteenth Amendment right to family association on behalf of both Parent Plaintiffs and Minor Plaintiffs. Counsel's assertion is consistent with Ninth Circuit authority holding that "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention," and "*children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures.*" *Wallis*, 202 F.3d at 1142 (emphasis added). Accordingly, while Claim 1 could be pleaded more artfully, the Court finds that when liberally construed Claim 1 encompasses a Fourteenth Amendment claim for violation of the right to family association on behalf of both Parent Plaintiffs and Minor Plaintiffs.

The Court declines Garcia's invitation to disregard the language in *Wallis* as erroneous or mere dicta. Moreover, the Court finds Garcia's argument that children do not have a right to make their *own* medical decisions to be a mischaracterization of Minor Plaintiffs' claim. Under *Wallis*, Minor Plaintiffs had the right to have their parents make medical decisions for them, and to have their parents present during medical procedures. *See Wallis*, 202 F.3d at 1141 ("The right to

8

family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state."). Minor Plaintiffs have asserted a violation of protected liberty interests based on Armenta's testing of their blood without parental consent.

Garcia's alternative motion for summary judgment against Minor Plaintiffs is DENIED. As discussed above, however, Garcia is entitled to summary judgment on other grounds.

### B. Armenta

Armenta joins Garcia's motion for summary judgment. The bulk of the motion, addressing Garcia's knowledge of Armenta's conduct, does not apply to Armenta. However, Armenta joins the portion of the motion arguing that summary judgment against Minor Plaintiffs is appropriate as to Claim 1, because California Education Code §48200 does not give rise to a Fourteenth Amendment liberty interest in a safe school campus.

As discussed above, Plaintiffs have abandoned their Fourteenth Amendment claim grounded in § 48200. However, the Court finds that when liberally construed Claim 1 encompasses a Fourteenth Amendment claim for violation of the right to family association on behalf of both Parent Plaintiffs and Minor Plaintiffs. Consequently, Armenta is not entitled to summary judgment against Minor Plaintiffs on Claim 1.

Armenta's motion for summary judgment is DENIED.

## IV. ORDER

(1) Garcia's motion for summary judgment is GRANTED;

(2) Armenta's motion for summary judgment is DENIED; and

(3) This order terminates ECF 73 and 74.

Dated: May 12, 2021

_____
BETH LABSON FREEMAN
United States District Judge